[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-10014
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 30, 2009
THOMAS K. KAHN
CLERK

D.C. Docket No. 07-10026 CR-KMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GEORMANI HERNANDEZ GARI,
DIUVEL RODRIGUEZ,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(June 30, 2009)

Before TJOFLAT, BLACK and COX, Circuit Judges.

COX, Circuit Judge:

Thirty-four Cuban aliens were brought in a go-fast boat to shallow waters near

North Key Largo under the cover of darkness. The aliens waded ashore and were

apprehended. The two men who crewed the boat–Geormani Hernandez Gari and

Diuvel Rodriguez–were also apprehended.  This appeal follows the prosecution and conviction of Gari and Rodriguez on thirty-four counts of alien smuggling.

We consider whether the evidence at trial was sufficient to sustain the convictions.  We also consider Defendants' arguments that their Sixth Amendment confrontation rights were violated by the district court's erroneous admission of I-213 forms (Record of Deportable/Inadmissible Alien) completed by Customs and Border Patrol agents.  And, we consider arguments that the district court abused its discretion in admitting testimony of prior bad acts by Defendant Gari and in denying Defendant Rodriguez's motion for a separate trial.

We conclude that the evidence does not support Defendants' convictions on Count 4 and, for that reason, vacate their sentences and remand to the district court for resentencing.  We affirm Defendants' convictions on all other counts.

## I.  BACKGROUND

Defendants Gari and Rodriguez were indicted on thirty-four counts of alien smuggling in violation of 8 U.S.C. § 1324(a)(2)(B)(iii).[1]  This statute makes it illegal

---

[1]     The statute states:

> Any person who, knowing or in reckless disregard of the fact that an alien has not received prior official authorization to come to, enter, or reside in the United States, brings to or attempts to bring to the United States in any manner whatsoever, such alien, regardless of any official action which may later be taken with respect to such alien shall, for each alien in respect to whom a violation of this paragraph

2

to bring or attempt to bring an alien to the United States, knowingly or in reckless disregard of the fact that the alien has not received prior official authorization to enter the United States, and without immediate presentation of the alien to an immigration official.

The Defendants were tried together. At trial, two Customs and Border Protection agents testified that they were flying a Black Hawk helicopter around 12:30 a.m. on June 25, 2007, when they saw a three-engine open fisherman boat, with no running lights on, overloaded with more than 30 people, near the shore of North Key Largo. When the agents directed a spotlight on the boat, between thirty and thirty-five people jumped into waist-deep water and headed to shore. The boat

---

occurs--
. . . .

(B) in the case of--
. . . .

(iii) an offense in which the alien is not upon arrival immediately brought and presented to an appropriate immigration officer at a designated port of entry,

be fined under Title 18 and shall be imprisoned, in the case of a first or second violation of subparagraph (B)(iii), not more than 10 years, in the case of a first or second violation of subparagraph (B)(i) or (B)(ii), not less than 3 nor more than 10 years, and for any other violation, not less than 5 nor more than 15 years.

8 U.S.C. §1324(a)(2)(B)(iii).

departed. The agents followed the boat in their helicopter, maintaining visual contact with the boat and keeping the spotlight on it as it fled and, eventually, docked. The same agents watched as the only two people on the boat–Gari and Rodriguez–were arrested by other law enforcement officials. Then, the helicopter returned to the location where the passengers had disembarked and located a group of approximately thirty-five people on shore nearby in a residential neighborhood. The agents in the helicopter watched the group until law enforcement officers arrived on the ground and began interacting with members of the group.

Customs and Border Protection Agent Alejandro Rodriguez testified that he met the group on the ground. He also testified, without objection, that members of the group were "walking down the street soaking wet" and that these people said they were from Cuba. (R.4 at 128.)

Customs and Border Patrol Agent Darrel Walraven testified that he too met the group of thirty-four aliens in a residential neighborhood in North Key Largo. Agent Walraven testified, without objection, that all the members of the group said they were from Cuba.[2] Agent Walraven arranged to have the aliens taken by bus to a

---

[2] Defendants' briefs state that they objected to Agent Walraven's testimony. But, Defendants voiced no objection during Agent Walraven's testimony. Instead, Defendants filed a pretrial motion in limine that argued that the "A files" created for each alien were inadmissible as testimonial statements that could not be cross-examined. In that motion, Defendants also argued that INS agent testimony about what the aliens told the agents was inadmissible as testimonial hearsay. Defendants requested that the trial court instruct the Government to instruct its witnesses not to testify about any communication between agents and the alleged aliens. The district court denied

Customs and Border Patrol station, where he assigned each of them an "A number," a unique number used to identify an alien entering the United States. As part of the process, Agent Walraven interviewed the aliens and completed thirty-four I-213 forms, one for each alien.

According to Agent Walraven, an I-213 Record of Deportable/Inadmissible Alien is a form routinely completed by the Border Patrol for every alien who illegally enters or is present in the United States and is apprehended by the Border Patrol. The top portion of each I-213 form created by Agent Walraven on the morning of June 25, 2007, contains both information directly observed by Agent Walraven and information provided by the alien in response to Agent Walraven's questions. The information on the top portion of each form is unique to each alien and, therefore, to each I-213 form. Below that information, on the bottom portion of each I-213 form, there is a narrative section written by Agent Walraven. The narrative section is the same on each of these thirty-four forms. The narrative section contains Agent

the motion. At trial, defense counsel stated at sidebar, before Agent Walraven began to testify, that the defense had a "continuing objection to the entire questioning." (R.4 at 138.)

Neither a motion in limine nor a blanket statement such as the one made by defense counsel before Agent Walraven testified is sufficient to preserve an evidentiary ruling for review by this court. "'The overruling of a motion in limine is not reversible error, only a proper objection at trial can preserve error for appellate review.'" *United States v. Rutkowski*, 814 F.2d 594, 598 (11th Cir. 1987) (quoting *Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir. 1980)) (other citations omitted). *See also* Fed. R. Evid. 103(a)(1) (requiring a timely objection stating the specific ground for objection).

5

Walraven's summary of the thirty-four Cuban aliens' accounts of their travel to and arrival in the United States and observations of the law enforcement agents involved in their apprehension. The bottom section of each I-213 form also records the fact that Agent Walraven's search of immigration records for documents pertaining to each individual alien yielded no such records.

In response to Defendants' motions in limine requesting exclusion of the I-213 forms as testimonial hearsay that could not be cross-examined (in violation of their Sixth Amendment confrontation rights), the Government argued that the forms did not contain testimonial statements and were admissible pursuant to Federal Rule of Evidence 803(8), the public records exception to the hearsay rule. Defendants' motions were denied.

At trial, one of the I-213 forms was admitted, without objection, during the Government's direct examination of Agent Walraven. (Ex. 12; R.4 at 151.) However, when the Government moved to admit the thirty-three other I-213 forms (Exs. 11 and 13-44), Defendants objected on the bases previously stated in their motions in limine. The district court overruled the objections. In all, thirty-four I-213 forms were admitted in evidence.

Agent Walraven testified that, on June 25, 2007, he performed a search of immigration records and found no prior authorization for entry into the United States

for any of the thirty-four aliens he processed that morning. The defense did not object to this testimony. On cross-examination, the defense showed Agent Walraven a copy of an Authorization for Parole of an Alien for one of the thirty-four aliens, Maria Dominguez-Alvarez, the subject of Count 4 of the indictment. The document was not admitted in evidence, but Agent Walraven testified that it appeared to be prior authorization for Alvarez to enter the United States through a designated port of entry.

The Government also presented Pablo Milian, a Special Agent with U.S. Immigration and Customs Enforcement stationed in Key Largo, who testified that, about three months prior to the June 25, 2007 incident, Defendant Gari had been found on a boat in the waters near Marathon, Florida, with twenty undocumented Cubans. Special Agent Milian testified that Gari was warned at that time "that it's illegal to have undocumented Cuban Nationals on your vessel in an attempt to bring them into the United States." (R.4 at 192.)

Gari had filed a motion in limine to exclude Special Agent Milian's testimony and other Federal Rule of Evidence 404(b) evidence. The court denied the motion and allowed the testimony over Gari's renewed objection at trial. The court also denied Defendant Rodriguez's day-of-trial request, made before the jury was selected, to sever the trials on the basis of his argument that evidence of Gari's prior bad acts

7

would prejudice Rodriguez's defense and make it impossible for him to receive a fair trial. After Special Agent Milian testified, the court instructed the jury that his testimony was not evidence of guilt in the crime for which Defendants were being tried and should be considered by the jury only as evidence of Defendant Gari's state of mind.

Defendant Rodriguez presented no witnesses. Defendant Gari presented witness Rafael Florez, a Cuban alien who claimed to have arrived in the United States on the night of June 24, 2007, on a wooden boat with engines. Florez testified that he had not met Defendants before the week of trial. He also testified that he came to the United States with a large group of Cubans who traveled for two days. When they landed in the Florida Keys, a helicopter shined a light on them as they were walking down the street and police officers met the group and took them to a station for questioning. Florez confirmed that he is the man referred to in one of the I-213 forms admitted in evidence (Ex. 28) and that he did not have prior authorization to enter the United States. He also testified that his brother and a man named Yohan Ojito (a man named in Ex. 22, another of the I-213 forms) were on the boat from Cuba with him.

At the close of all the evidence, each Defendant made a motion for judgment of acquittal on each count pursuant to Rule 29 of the Federal Rules of Criminal Procedure. Defendants argued: (1) the Government had not proved that it was in fact

8

Defendants who had attempted to bring the aliens into the United States; (2) the Government had not proved that each of the thirty-four aliens processed by the Border Patrol lacked prior authorization to enter the United States; and (3) the Government had not proved that Defendants brought each of the specific aliens identified by name in the indictment into the United States. The court denied the motions.

The jury found Defendants guilty on all thirty-four counts. The court sentenced each Defendant to ninety-six months' (eight years') imprisonment on each count, to be served concurrently, and twenty-four months' (two years') supervised release on each count, also to be served concurrently.

## II. ISSUES ON APPEAL

This appeal presents several issues. In addressing Defendants' challenges to their convictions, we consider whether the court erred by: (1) denying Defendants' motions for acquittal on each count of the indictment; (2) admitting the I-213 Record of Deportable/Inadmissible Alien forms; (3) admitting the testimony of Special Agent Milian, the Immigration and Customs Enforcement agent, about his previous encounter with Defendant Gari; and (4) denying Defendant Rodriguez's motion for a separate trial.[3]

---

[3] Defendants also argue that, pursuant to *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), their sentences are unreasonable. Because we reverse Defendants'

## III. DISCUSSION

### A. Sufficiency of the Evidence

Defendants were convicted on thirty-four counts of alien smuggling in violation of 8 U.S.C. § 1324(a)(2)(B)(iii). A person is guilty of violating that statute if he: (1) brings or attempts to bring an alien into the United States, (2) in knowing or reckless disregard of the fact that the alien has not received prior official authorization to enter the United States, and (3) does not immediately present that alien to an immigration officer at a designated port of entry. *Id.*

Defendant Gari argues that the district court erred in denying his motion for judgment of acquittal on each count. Gari argues that the evidence against him was insufficient in that the Government failed to prove that the aliens were brought to the United States by him and failed to prove that each of the thirty-four aliens lacked prior authorization to enter the United States. Defendant Rodriguez does not appeal the denial of his Rule 29 motion or make any other argument about the sufficiency of the evidence. The Government argues that the evidence was sufficient for the jury to find Gari guilty beyond a reasonable doubt.

---

convictions on Count 4, we vacate their sentences and do not address their reasonableness arguments.

We review a court's denial of a motion for judgment of acquittal by performing de novo review of the sufficiency of the evidence.[4] *United States v. Dulcio*, 441 F.3d 1269, 1276 (11th Cir. 2006). We view the evidence in the light most favorable to the Government and draw all reasonable factual inferences in favor of the jury's verdict. *Id.* Our inquiry is whether a reasonable fact-finder could have determined that the evidence proved Defendant's guilt beyond a reasonable doubt. *United States v. Smith*, 459 F.3d 1276, 1286 (11th Cir. 2006) (citing *United States v. Peters*, 403 F.3d 1263, 1268 (11th Cir. 2005)).

Having reviewed the record carefully, we conclude that the evidence was sufficient to convict Gari on all counts except Count 4. The jury heard testimony that, in the early morning of June 25, 2007, two Customs and Border Protection agents who were flying a Black Hawk helicopter shined a spotlight on an overloaded, unlit open fisherman-style boat and watched as a group of between thirty and thirty-five people jumped out of that boat into waist-deep water and waded to the shore of North

---

[4] Gari does not argue that we should disregard any of the evidence he argues was improperly admitted when reviewing the sufficiency of the evidence for conviction. The rule is clear that, "as far as Double Jeopardy concerns are implicated, we review the sufficiency of *all* the evidence admitted at trial–admissible or inadmissible." *United States v. Smith*, 459 F.3d 1276, 1286 n.10 (11th Cir. 2006) (citing *Lockhart v. Nelson*, 488 U.S. 33, 40-41, 109 S. Ct. 285, 291 (1988) ("It is quite clear from our opinion in *Burks* that a reviewing court must consider all of the evidence admitted by the trial court in deciding whether retrial is permissible under the Double Jeopardy Clause . . . .")); *see also United States v. Yates*, 438 F.3d 1307, 1319 n.13 (11th Cir. 2006) (en banc) (applying "the usual rule" on sufficiency of the evidence review and considering all the evidence admitted at trial, including evidence admitted in violation of the Sixth Amendment confrontation rights.)

Key Largo. The same agents continuously watched the boat until it docked and Defendants–then the boat's only occupants–were taken into custody.

Shortly thereafter, a group of thirty-four wet people was intercepted by law enforcement agents in a neighborhood close to the disembarkation. All thirty-four people said they came from Cuba. Agent Walraven, the Border Patrol Agent in charge of processing the members of the group, performed a search of immigration records and found no prior authorizations for any members of the group to enter the United States. He prepared thirty-four I-213 forms, one for each of them. These forms state that each of the aliens was Cuban and that none of them had prior authorization to enter the United States.

Defense witness Rafael Florez testified that he came from Cuba and arrived in the Florida Keys on the same evening the agents in the helicopter saw the group arrive in North Key Largo. Florez testified that he arrived with a large group of Cubans, that a helicopter shined a light on them while they were walking in the streets, that police cars met the group, and that officers took them to a station for questioning. He testified he told the officers that he was Cuban, that he did not have prior authorization to enter the United States, and that he had entered the United States illegally. Florez confirmed that he is the man referred to on one of the I-213 forms in evidence. (Ex. 28). He also testified that his brother and a man named

12

Yohan Ojito (named in Ex. 22, another of the I-213 forms) were on the boat from Cuba with him.

Considering this evidence, we find it sufficient for a reasonable fact-finder to determine that Defendant Gari was, in fact, one of two men who crewed the boat that brought thirty-four Cuban aliens to the United States, off the shore of North Key Largo, on June 25, 2007. And, a jury could reasonably infer, as to thirty-three of the thirty-four Cubans, that Agent Walraven could locate no prior authorizations for them to enter the United States because no such authorizations existed.

However, as to alien Maria Dominguez-Alvarez, Agent Walraven testified that an immigration document he was shown by defense counsel appeared to be prior authorization for Alvarez to enter the United States through a designated port of entry. The Government's answer brief does not respond to the suggestion that, as to Alvarez, the evidence at trial did not establish that she did not have prior authorization to enter the United States.[5]   Given Agent Walraven's testimony, we hold that no reasonable jury could conclude that Alvarez did not have prior authorization to enter the United States, an element of the crime. Thus, the district court erred in denying Defendant Gari's motion for judgment of acquittal as to Count

_____

[5]      The Government argues that Alvarez did not have authorization to enter the United States *where* she did–at a place other than a designated point of entry. But, the crime charged in the indictment requires that the alien have no authorization to enter the United States–not that the alien have no authorization to enter at the location she did.

13

4 of the indictment, the count that identifies Alvarez. The district court committed no error in denying Defendant Gari's motion for judgment of acquittal on the other counts.

Despite the fact that Defendant Rodriguez has not challenged the district court's denial of his Rule 29 motion for judgment of acquittal, we exercise our discretion to recognize plain error in the denial of that motion as to Count 4. *See Silber v. United States*, 370 U.S. 717, 718, 82 S. Ct. 1287, 1288 (1962) ("'In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings.'") (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S. Ct. 391, 392 (1936)). We have recognized that it would be "anomalous to reverse some convictions and not others when all defendants suffer from the same error." *United States v. Gray*, 626 F.2d 494, 497 (5th Cir. 1980).[6] The district court's error in denying the motions for acquittal on Count 4, made by each Defendant at trial, was plain. Therefore, we reverse Defendant Gari's and Defendant Rodriguez's convictions on Count 4. As in *Gray*, the Government is

---

[6] Pursuant to *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), cases decided by the Fifth Circuit before October 1, 1981, are precedent in this circuit.

not prejudiced by our consideration of the error with respect to Defendant Rodriguez as it had the opportunity to fully brief this issue in response to Defendant Gari's opening appellate brief.

## B.    Admission of I-213 Forms

Defendants argue that the court erred in admitting the I-213 Record of Deportable/Inadmissible Alien forms because they are testimonial hearsay admitted in violation of their Sixth Amendment confrontation rights.[7]  More specifically, Defendants' argument is that their Sixth Amendment rights were violated because they were unable to cross-examine the aliens whose statements, given in response to Agent Walraven's questioning, are contained in the I-213 forms.  Gari contends that this error was prejudicial in that the I-213 forms were the only evidence that: (1) the specific aliens alleged in the indictment arrived in the United States, (2) the aliens had no prior authorization to enter the United States, and (3) there were thirty-four of

---

[7]    The Confrontation Clause states, "In all criminal prosecutions, the accused shall enjoy the right . . .  to be confronted with the witnesses against him."  U.S. Const. Amend VI.

Hearsay is generally defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  Hearsay is admissible if it falls within one of the hearsay exceptions enumerated in Federal Rules of Evidence 803, 804, and 807.   But, if a hearsay statement is testimonial, the Confrontation Clause prohibits its admission at trial, even if it falls within a hearsay exception, unless: (1) the statement's declarant is unavailable, and (2) the defendant has had a prior opportunity to cross-examine the declarant.  *See United States v. Baker*, 432 F.3d 1189, 1203 (11th Cir. 2005) (citing *Crawford v. Washington*, 541 U.S. 36, 59, 68, 124 S. Ct. 1354, 1369, 1374 (2004)).

them. Rodriguez does not identify any prejudice he suffered as a result of the alleged error. The Government responds that the I-213 forms were properly admitted as they do not constitute testimonial hearsay and are public records admissible pursuant to Federal Rule of Evidence 803(8). The Government also argues, in the alternative, that any error in admitting the I-213 forms was harmless given the other evidence of Defendants' guilt.

With regard to preserved challenges to the admissibility of evidence, "we review [the district court's rulings] for clear abuse of discretion." *United States v. Hunerlach*, 197 F.3d 1059, 1065 (11th Cir. 1999) (quotation omitted). "A district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100, 116 S. Ct. 2035, 2047 (1996) (citation omitted), superseded by statute on other grounds as noted in *United States v. Mandhai*, 375 F.3d 1243, 1249 (11th Cir. 2004).

"[W]e review de novo Defendants' claim that their Sixth Amendment rights were violated." *United States v. Yates*, 438 F.3d 1307, 1311 (11th Cir. 2006) (en banc) (citing *Lilly v. Virginia*, 527 U.S. 116, 137, 119 S. Ct. 1887, 1900 (1999)). And, even if Defendants' Sixth Amendment rights were violated, we consider whether the error was harmless. *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S. Ct. 1431, 1438 (1986). "[T]he test for determining whether a constitutional error is

16

harmless . . . is whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Neder v. United States*, 527 U.S. 1, 15, 119 S. Ct. 1827, 1837 (1999) (quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 828 (1967)) (other citations omitted).

Each of the admitted I-213 forms consists of two distinct sections. The top portion of each I-213 form contains descriptive and biographical information taken from Agent Walraven's direct observation and conversation with each individual alien. This section of the I-213 form contains information such as the alien's name, sex, hair color, eye color, height, weight, occupation, country of citizenship, date of birth, age, and his parents' names. It also records the name of the agent completing the form, whether the alien was fingerprinted, and the place, date, and time the alien was found. There is a line across the front page of each I-213 form, below which is printed: "Narrative. (Outline particulars under which alien was located/apprehended. Include details not shown above regarding time, place and manner of last entry, or any other entry, and elements which establish administrative and/or criminal violation. Indicate means and route of travel to interior.)" (*See e.g.,* Ex. 13.) In the bottom portion of each I-213 form, Agent Walraven recorded the negative results of his immigration record search as to each individual alien and wrote a report of the events that led to the apprehension of the aliens (including law enforcement officers'

accounts and impressions regarding the night's events and a summary version of the aliens' stories of travel to and arrival in the United States).

We hold that the district court did not commit reversible error in admitting the I-213 forms. First, we note that one of the I-213 forms (Ex. 12) was admitted without objection, during the Government's direct examination of Agent Walraven. Defendants do not acknowledge this in their briefs and do not ask this court to review the admission of that document under the plain error standard, the standard of review applicable when no objection is made at trial to the admission of evidence. *United States v. Raad*, 406 F.3d 1322, 1323 (11th Cir. 2005) (citing *United States v. Hall*, 314 F.3d 565, 566 (11th Cir. 2002); *United States v. Olano*, 507 U.S. 725, 731-32, 113 S. Ct. 1770, 1776 (1993)). Thus, we elect not to review the admission of Exhibit 12 for plain error. And, we conclude that any error in the admission of any of the I-213 forms, in their entirety, was harmless. Because any error was harmless, we need not – and do not – decide whether the forms include testimonial hearsay admitted in violation of Defendants' confrontation rights or whether they include evidence admissible under a hearsay exception.

As stated above, because Defendants' challenge to admission of this evidence implicates a constitutional right, when considering whether any error was harmless, we ask "whether it appears 'beyond a reasonable doubt that the error complained of

18

did not contribute to the verdict obtained.'" *Neder*, 527 U.S. at 15, 119 S. Ct. at 1837 (quoting *Chapman*, 386 U.S. at 24, 87 S. Ct. at 828) (other citations omitted). In making this determination, factors to be considered are: the importance of the uncross-examined statements in the prosecution's case, whether those statements were cumulative, the presence or absence of evidence corroborating or contradicting the testimonial statement on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case. *Van Arsdall*, 475 U.S. at 684, 106 S. Ct. at 1438 (citations omitted); *Hunerlack*, 197 F.3d at 1067 n.9. We ask whether the "minds of an average jury" would have found the prosecution's case less persuasive if the erroneously admitted evidence had been excluded. *See Schneble v. Florida*, 405 U.S. 427, 432, 92 S. Ct. 1056, 1060 (1972) (quoting *Harrington v. California*, 395 U.S. 250, 254, 89 S. Ct. 1726, 1728 (1969)).

Having considered the entire trial record, including the contents of the top and bottom portions of the I-213 forms and the testimony offered at trial, we conclude that the I-213 forms were relatively unimportant in the prosecution's case. In reaching this conclusion, we observe that one I-213 form (Ex. 12) was admitted in its entirety, without objection, and therefore resided in evidence whether or not any other of the I-213 forms should have been excluded upon Defendants' objection. The bottom portion of Exhibit 12 contains the same narrative as the bottom portion of each of the

19

other I-213 forms. While we could rely on that fact alone to find that admission of the bottom portions of the challenged exhibits was harmless, we need not.[8] Other evidence presented at trial supports our holding that admission of both parts of all the I-213 forms was harmless.

The I-213 forms do not contain statements harmful to the defense that are not cumulative of other evidence admitted at trial. Law enforcement agents testified at trial as to the same facts included in the forms–how Defendants' boat was spotted and tracked, that the agents saw a group of people disembark Defendants' boat in the shallow waters off North Key Largo and make their way to land, how Defendants were apprehended, that there was a group of thirty-four Cuban nationals found that same day,[9] that a search of immigration records produced no prior authorizations for

---

[8] Defendants argue that if any portion of the I-213 forms is inadmissible, it was error to admit the forms in their entirety. Defendants cite no authority for that assertion, however, and we discern no reason why the I-213 forms could not have been redacted to prevent the jury from considering any inadmissible material. Trial courts routinely redact inadmissible portions of documents prior to their admission in evidence. Indeed, in *Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266 (2006), the Supreme Court instructed that trial courts "should redact or exclude the portions of any statement that have become testimonial, as they do, for example, with unduly prejudicial portions of otherwise admissible evidence." *Id*. at 829, 126 S. Ct. at 2277.

[9] One of Defendant Gari's arguments is that he was prejudiced by the improper admission of the I-213 forms because they were the only evidence of the aliens' identities. But no such identification is required. *See United States v. Bazan*, 637 F.2d 363, 367-68 (5th Cir. Feb. 17, 1981) (affirming multiple convictions for alien smuggling over defendant's insufficiency of the evidence challenge, despite the fact that the prosecution did not prove the names of the aliens). *See also United States v. Powell*, 498 F.2d 890, 892 (9th Cir. 1974) (holding that the name of a smuggled alien is not an element of the crime defined in 8 U.S.C. § 1324(a)(2)) .

those people to enter the United States, that the aliens claimed to have traveled to the United States on a small homemade boat, that none of the aliens could explain where the boat was at the time of the interview, and that no such boat was found by law enforcement. Defendants had ample opportunity to object to and cross-examine this testimony.

We answer in the negative the question whether an average jury would have found the prosecution's case less persuasive if the I-213 forms had been excluded. We hold that any error in admitting any of the I-213 forms, in their entirety, was harmless beyond a reasonable doubt.

## C. Admission of Immigration and Customs Agent Testimony

Defendant Gari argues that he is entitled to a new trial because the district court erred in admitting the testimony of Special Agent Milian, the Immigration and Customs Enforcement agent, about events that took place three months prior to the actions for which Gari was on trial because that evidence was unfairly prejudicial. Gari also argues that he is entitled to a new trial because the threat that the Government would present evidence of other prior acts prevented Gari from testifying on his own behalf. The Government responds that Agent Milian's testimony was properly admitted, pursuant to Federal Rule of Evidence 404(b), to prove Gari's state

21

of mind and that it would be improper for this court to review Gari's claim of error regarding evidence that was never introduced at trial.

Considering Gari's argument that the district court erred in admitting Agent Milian's testimony, we find no abuse of discretion. We do not agree with Gari that the evidence was unfairly prejudicial. Under Federal Rule of Evidence 404(b), evidence of other crimes, wrongs, or acts "may . . . be admissible for . . . purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Fed. R. Evid. 404(b). In this case, where Gari was being tried for a crime with a scienter element of knowledge or recklessness, the testimony–that, on a date not very remote in time from the date of the charged conduct, Gari was found on a boat with a group of undocumented Cuban aliens and instructed that attempting to bring undocumented aliens into the United States is a crime–was highly relevant.

We agree with the Government that we should not consider Gari's argument that the district court's denial of his motion in limine to exclude any evidence of prior bad acts created a threat that the Government would present evidence of other such acts that prevented Gari from exercising his constitutional right to testify on his own behalf. The Government not only did not seek to introduce the evidence that Gari now says he feared; but, in fact, the Government informed the court and Defendants,

22

during its case-in-chief, that the Government would not seek to introduce any evidence of prior acts other than the testimony of Special Agent Milian discussed above. (R.4 at 157.) So, "any possible harm flowing from the district court's [in limine] ruling–permitting the admission of the [other evidence]–is wholly speculative." *United States v. Hall*, 312 F.3d 1250, 1258 (11th Cir. 2002) (citation omitted).

## D.    Denial of Rodriguez's Motion for Severance of Trials

Defendant Rodriguez argues that the district court erred in denying his motion for a separate trial because Special Agent Milian's testimony about Gari's prior bad acts substantially prejudiced Rodriguez's defense. The Government argues that, by failing to obtain a ruling on his motion to sever and accepting a limiting instruction, Rodriguez failed to preserve this issue for appeal. The Government also argues that any potential spillover effect that the evidence may have had on Rodriguez's defense was addressed by the court's instruction to the jury admonishing the jurors that this testimony was not evidence of either Defendant's guilt in the current prosecution.

The denial of a motion to sever is reviewed for abuse of discretion. *United States v. Walser*, 3 F.3d 380, 385 (11th Cir. 1993). "We will not reverse the denial of a severance motion absent a clear abuse of discretion resulting in compelling

23

prejudice against which the district court could offer no protection." *Id.* (citations omitted).

We address the Government's procedural argument first. The record indicates that Rodriguez requested a separate trial before the jury was selected. The court implicitly denied his motion and offered the alternative of the limiting instruction. Rodriguez "accepted" that instruction only after it was clear that the district court had decided it would not sever Defendants' trials. Therefore, we consider Rodriguez's argument on the merits.

But, we reject Rodriguez's argument that the district court erred in denying his motion for a separate trial because Special Agent Milian's testimony about Gari's prior acts substantially prejudiced Rodriguez's defense. Rodriguez has not demonstrated that he suffered "compelling prejudice against which the district court could offer no protection." *Id.*

Indeed, after the agent testified, the district court instructed the jury:

> You have heard evidence of acts of one of the defendants which may be similar to those charged in the indictment but which were allegedly committed on other occasions. <u>You may not consider any of this evidence in deciding if the defendants committed the acts charged in this indictment.</u> However you may consider this evidence for other very limited purposes.
>
> If you find beyond a reasonable doubt <u>from other evidence in this case that this defendant did commit the acts charged in the indictment</u>, then

24

you may consider evidence of similar acts allegedly committed on other occasions to determine whether the defendant had the state of mind or intent necessary to commit the crimes charged in this indictment. For that very limited purpose only.

(R.4 at 192-93) (emphasis added.) Rodriguez provides no convincing argument as to why we should not follow "the almost invariable assumption of the law that jurors follow their instructions" and conclude that the jury did not consider the Immigration and Customs Enforcement agent's testimony as evidence of Rodriguez's guilt. *See Richardson v. Marsh*, 481 U.S. 200, 206, 107 S. Ct. 1702, 1707 (1987) (citing *Francis v. Franklin*, 471 U.S. 307, 325, n.9, 105 S. Ct. 1965, 1976, n.9 (1985)).

## E. Sentences

Both Defendants challenge their prison sentences as unreasonable pursuant to *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005). But, because we have reversed Defendants' convictions on Count 4, we vacate their sentences in their entirety and remand to the district court for resentencing. "Multiple count convictions present the trial judge with the need for a sentencing scheme which takes into consideration the total offense characteristics of a defendant's behavior. When that scheme is disrupted because it has incorporated an illegal sentence, it is appropriate that the entire case be remanded for sentencing." *United States v. Lail*, 814 F.2d 1529, 1530 (11th Cir.1987) (quoting *United States v. Rosen*, 764 F.2d 763,

767 (11th Cir.1985)). *See also United States v. Klopf*, 423 F.3d 1228, 1245-46 (11th Cir. 2005); *United States v. Hernandez*, 145 F.3d 1433, 1441 (11th Cir. 1998). Therefore, we do not review the sentences for reasonableness.

We commit the decisions as to whether to conduct a resentencing hearing and as to the scope of any such hearing to the discretion of the district court. *See United States v. Rogers*, 848 F.2d 166, 169 (11th Cir. 1988) (recognizing that a district court may properly limit the scope of a resentencing hearing on remand because "it [is] in the interest of judicial economy for the court not to redo that which had been done correctly at the first hearing.")

## IV.  CONCLUSION

For the foregoing reasons, we affirm Defendants' convictions on all counts except Count 4.  We reverse Defendants' convictions on Count 4.  We vacate Defendants' sentences on all counts and remand to the district court for resentencing.

CONVICTIONS AFFIRMED IN PART AND REVERSED IN PART; SENTENCES VACATED AND CASE REMANDED FOR RESENTENCING.