[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 24, 2010
JOHN LEY
CLERK

No. 09-15533
Non-Argument Calendar

_____

D. C. Docket No. 07-10026-CR-KMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GEORMANI HERNANDEZ GARI,
DIUVEL RODRIGUEZ,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(August 24, 2010)

Before EDMONDSON, BIRCH and CARNES, Circuit Judges.

PER CURIAM:

Geormani Hernandez Gari and Diuvel Rodriguez were convicted of 33 counts of alien smuggling, in violation of 8 U.S.C. § 1324(a)(2)(B)(iii). They contend that their 96-month sentences, which are 36 months higher than the 60-month statutory mandatory minimum and 84 months lower than the 180-month statutory maximum, are procedurally and substantively unreasonable.

**I.**

We review the final sentence imposed by a district court for reasonableness. United States v. Booker, 543 U.S. 220, 264, 125 S.Ct. 738, 767 (2005). First, we ensure that the district court did not commit a procedural error, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence— including an explanation for any deviation from the Guidelines range."[1] Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 597 (2007). If we determine that the district court's sentencing decision is procedurally sound, we review the

---

[1]The § 3553(a) factors that must be considered are: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for adequate deterrence to criminal conduct; (5) protection of the public from further crimes of the defendant; (6) the kinds of sentences available; (7) the applicable guideline range and any pertinent policy statement issued by the Sentencing Commission; (8) the need to avoid unwarranted sentencing disparities; and (9) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(1)–(7).

substantive reasonableness of the sentence only for abuse of discretion, taking into account the totality of the circumstances, including the extent of any variance from the guideline range. Id. at 51, 128 S.Ct. at 597. "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both that record and the factors in section 3553(a)." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). While we ordinarily expect a sentence within the guidelines range to be reasonable, we do not presume that a sentence outside the guidelines range is unreasonable. Id. at 788; Gall, 552 U.S. at 51, 128 S.Ct. at 597.

"If [the sentencing judge] decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Id. at 50, 128 S.Ct. at 597. The Supreme Court has instructed:

> [An appellate court] may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance. The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.

Id. at 51, 128 S.Ct. at 597. We will remand for resentencing based on substantive unreasonableness only "if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors

3

by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008) (quotation marks omitted).

## II.

Gari's and Rodriguez's PSI guidelines calculations were exactly the same. Their base offense level was 12. See U.S.S.G. § 2L1.1(a)(3). There was a 6-level increase because the offense involved 25–99 aliens. See id. § 2L1.1(b)(2)(B). There was a 2-level increase because "the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person." See id. § 2L1.1(b)(6). With a total offense level of 20 and a criminal history category of I, their guidelines range was 33 to 41 months. After applying the statutory mandatory minimum of five years, however, their guidelines sentence became 60 months. See id. § 5G1.1(b) ("Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence.")). Neither defendant objected to the PSI.

## A.

Gari and Rodriguez were originally sentenced in 2007. At that sentence hearing, counsel for Rodriguez pointed out to the district court that the guidelines

4

sentence was 33 to 41 months, which was increased to 60 months because of the mandatory minimum. Rodriguez's counsel described this as "a run-of-the-mill alien smuggling case" and argued for a 60-month sentence. Counsel for Gari did the same, asserting that a 60-month sentence would "take[ ] into consideration the promoting respect for society [sic] and also as a deterrent" factors under § 3553(a).

The district court commented that eleven alien smuggling defendants in seven different cases had appeared before it for sentencing on that day alone. Based on its docket and the § 3553(a) factors, the district court stated that a sentence was required which would "afford[ ] adequate deterrence to others who would contemplate engaging in similar conduct." The court explained:

> The frequency that these [alien smuggling] cases arise and the need for a sentence to promote respect for the law and to provide for adequate deterrence, particularly, I think, in this South Florida community and in the Key West community, in particular has seen an increasing number of these kinds of cases, and accompanied by a flagrant disregard for the law that prohibits this kind of activity.

> I think people are on notice of this kind of illegal behavior and the consequences of it, and yet they seem to continue this sort of disregard of the law and divert scarce law enforcement resources. . . .

After stating that it had considered the parties' arguments, the PSI, which included the advisory guidelines, and the § 3553(a) factors, the district court sentenced each of the defendants to 96 months running concurrently on all 34 counts of their convictions. Counsel for both defendants objected to the upward variance.

5

**B.**

Gari and Rodriguez challenged both their convictions and sentences in an earlier appeal. United States v. Gari, 572 F.3d 1352, 1358 (11th Cir. 2009). We reversed their convictions on count 4 based on insufficient evidence but affirmed on the other 33 counts.[2] Id. We declined to review the sentences for reasonableness and remanded for resentencing in light of the vacated count. Id. at 1366 (citing United States v. Lail, 814 F.2d 1529, 1530 (11th Cir. 1987). We issued this mandate to the district court:

> We commit the decisions as to whether to conduct a resentencing hearing and as to the scope of any such hearing to the discretion of the district court. See United States v. Rogers, 848 F.2d 166, 169 (11th Cir. 1988) (recognizing that a district court may properly limit the scope of a resentencing hearing on remand because "it [is] in the interest of judicial economy for the court not to redo that which had been done correctly at the first hearing.").

Id. at 1366.

On October 14, 2009, the district court conducted a resentencing hearing with counsel for Rodriguez present. Gari was not available at that time. The court observed that because the defendants had been convicted on numerous counts and only a single count had been vacated, it was inclined to impose the same sentence.

---

[2] All 34 counts of conviction were for alien smuggling in violation of 8 U.S.C. § 1324(a)(2)(B)(iii). Gari, 572 F.3d at 1358–59. Count 4 referred to alien Maria Domiguez-Alvarez, and we held that "no reasonable jury could conclude that Alvarez did not have prior authorization to enter the United States, an element of the crime." Id. at 1360.

Nonetheless, the court decided to review the transcript from the original 2007 sentence hearing in order to review the arguments made by the parties and its own reasons for imposing an above-the-guidelines sentence, and it instructed the government and defense counsel to submit a copy of the transcript.[3]

## C.

The court continued the resentence hearing until October 22, 2009, and at that hearing both Gari and Rodriguez were present, each with his own lawyer. The court explained that it had reviewed the transcript of the original 2007 sentence hearing. It asked the parties why it "should not reimpose the sentence that was originally imposed" when the nature and scope of the criminal conduct had remained basically unchanged. Even though one count of the defendants' convictions had been vacated, the advisory guidelines sentence of 60-months was the same. Even so, the court permitted defense counsel to address the § 3553(a) factors and to present a "reasonableness" arguments about the original 96-month sentences.

Counsel for Rodriguez asked the court to consider the extent of the upward variance, particularly in light of what the guidelines sentence would have been but for the 60-month mandatory minimum. Counsel mentioned that Rodriguez's

---

[3] The same district court judge presided over the defendants' trial, their original 2007 sentence hearing, and their 2009 resentencing proceedings.

7

mother had become very ill. Counsel also argued that the desire "to remove people, Cuban nationals, from a communist-fascist nation" motivates people in the community in a way that cannot be deterred by sentencing above the mandatory minimum. She downplayed the seriousness of Gari and Rodriguez's offenses, emphasizing that the court had sentenced other defendants convicted of alien smuggling crimes in cases that had involved more dangerous chases by law enforcement, some of which had resulted in injury or death. She stated that Rodriguez was now prepared to accept responsibility for his actions, that he had been gainfully employed ever since he first came to the United States, and that he could be a contributing member of society again. The court then heard from Rodriguez's mother, who said he was hardworking and a good son who helped to support her. Rodriguez addressed the court, apologizing and asking for another chance.

Counsel for Gari emphasized that the defendants were "merely workers" and that they had not organized the smuggling trip. She argued that Gari had taken responsibility for his actions and had not been "written up for anything" in prison. Gari addressed the court, apologizing and stating that he accepted responsibility for his actions. Even so, he tried to explain away his crimes, stating that he had been "deceived" by two people who had told him that their relatives were stranded on a

boat that had broken down in Cay Sol, and he merely went to pick up those people. When he got there, 34 people were waiting. He asserted that he did not "charge any money" and did not "derive any benefit" from what he had done. Gari concluded by telling the district court that he and Rodriguez "were simply puppets of those other people who are out on the streets." In response to a question from the district court, counsel for Gari admitted that Gari had come to the United States illegally in 2004.

The government called as a witness Brian Michael Chapman, a lieutenant in the Coast Guard. Chapman testified about the resources used by the Coast Guard in conducting an interdiction and how that affects the Coast Guard's ability to perform its other duties. The court commented that one of the reasons "this type of offense is serious [is] because it takes the Coast Guard away from its other important non-law enforcement missions." Defense counsel argued that no more law enforcement resources were used here than in the typical case and that use of those resources could not justify an upward variance from the guidelines sentence.

The court incorporated its remarks from the original sentence hearing and made some additional comments about the § 3553(a) factors. Considering the nature and circumstances of the offense, the court found that it was inherently dangerous to try to cross the Florida Straits in a 33-foot boat at night without

9

running lights and overloaded with 34 people. In its assessment of the seriousness

of the offense, the court emphasized the importance of maintaining the security of

the nation's borders, stating:

> And those who are attempting to come to the United States and cross
> our borders for whatever reason, for whatever their motivation, whatever their
> perceived sense of what's right or wrong, they are penetrating the physical security
> of the United States and certainly in the straits of Florida. They do it with a brazen
> impudence that somehow it's a right that they have to challenge the physical
> integrity of the United States.

The court concluded that it could not "overstate the seriousness of the

offense and the significance of trying to maintain a secure border; . . . a punishment

should reflect the seriousness of that type . . . of offense, and that a punishment is

necessary to deter others who might engage in similar kinds of behavior." The

court explained that it had considered the parties' arguments, the PSIs with their

calculation of the advisory guidelines, and the § 3553(a) factors. It then reimposed

the 96-month sentences that it had ordered at the original 2007 hearing.

### III.

The district court properly considered and adequately explained its findings

about the nature and circumstances of the offense, see 18 U.S.C. § 3553(a)(1), its

seriousness, see id. § 3553(a)(2)(A), the need to promote respect for the law, see

id., and the need for the sentence imposed "to afford adequate deterrence to

criminal conduct," id. § 3553(a)(2)(B). A district court is not required to discuss its consideration of every one of the § 3553(a) factors, as long as the sentencing judge "set[s] forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." Rita v. United States, 551 U.S. 338, 356, 127 S.Ct. 2456, 2468 (2007). The court emphasized the need for the sentences to reflect the seriousness of the offense and explained why it considered these offenses to be particularly serious. Emphasizing the large number of alien smuggling crimes in the area and the serious threat they pose to national security, the court focused on the need for general deterrence.

Gari and Rodriguez contend that an unwarranted sentencing disparity was created because other defendants, who were sentenced on the same day by the same district judge, were sentenced within their guidelines ranges for alien smuggling offenses. At their initial sentencing Gari and Rodriguez argued that there had not been a high speed chase in their case, and no one was seriously put at risk of injury before they eventually pulled over in a marina and stopped their boat. Similarly, at their resentence hearing they argued that the court had seen "different degrees of chase" in other cases: "And to be sure, this Court has seen other levels of chase and other levels of endangerment, some involving death. And this case

11

did not present it."  R. Vol. 8 at 11.

We have explained that "[d]isparity between the sentences imposed on codefendants is generally not an appropriate basis for relief on appeal."  United States v. Regueiro, 240 F.3d 1321, 1325–26 (11th Cir. 2001).  That also holds true for allegations of disparity when the same judge on the same day sentences multiple defendants in different cases on convictions for similar crimes.  The information provided in Rodriguez's brief to this Court about other defendants' sentences fails to establish that the district court created an unwarranted sentencing disparity when it imposed an upward variance in Gari and Rodriguez's case.  The guidelines range for six of the nine other defendants Rodriguez mentions is listed as unknown, so it is impossible to compare those sentences even in terms of possible variances.[4]  In the present case, simply comparing the length of other defendants' sentences for purportedly similar crimes does not establish an unwarranted sentencing disparity.

Taking into account the totality of the circumstances, we cannot say that the district court abused its discretion by sentencing Gari and Rodriguez to 96 months

---

[4] Rodriguez's brief includes a chart listing the "defendant's name," "guidelines," "sentence," and "aggravating factors" for Gari and Rodriguez and for nine other defendants the district court sentenced on the same day.  Br. of Appellant Rodriguez at 34.  For five of those other defendants, the "guidelines" is listed as "unknown" and another one is listed as "n/a" based on that defendant's fugitive status.  Id.

12

imprisonment, which was 84 months below the 15-year statutory maximum sentence. The district court did not "weigh[ ] the factors in a manner that demonstrably yields an unreasonable sentence." Pugh, 515 F.3d at 1191.

**AFFIRMED.**