[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-10060

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 1, 2011
JOHN LEY
CLERK

D. C. Docket No. 1:07-cv-03044-CAP

WOODRIDGE USA PROPERTIES, L.P.,

Plaintiff-Appellant,

versus

SOUTHEAST TRAILER MART, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(February 1, 2011)

Before BLACK, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

Plaintiff Woodridge USA Properties, L.P. ("Woodridge") appeals the

district court's grant of judgment as a matter of law in favor of Defendant

Southeast Trailer Mart, Inc. ("STM") in this breach of contract action. Specifically, Woodridge argues: (1) that the district court erred in granting STM's motion for judgment as a matter of law; (2) that the district court erred by denying Woodridge's motion for summary judgment; and (3) that the district court erred by denying Woodridge's motion in limine to exclude evidence of its efforts to mitigate its damages. After review and oral argument, we affirm.

## I. Grant of Judgment as a Matter of Law

Woodridge argues that the district court erred in granting judgment as a matter of law in favor of STM for several reasons. First, Woodridge contends that STM never tendered or delivered the trailers to Woodridge. It also argues that whether McCarty acted as Woodridge's agent and whether Woodridge timely rejected the trailers were questions for the jury. Finally, Woodridge argues that, at most, it only accepted twenty of the trailers and not the entire order of eighty-seven as encompassed in the district court's judgment.

"We review de novo a district court's grant of judgment as a matter of law under Fed. R. Civ. P. 50, applying the same standards as the district court." Slicker v. Jackson, 215 F.3d 1225, 1229 (11th Cir. 2000). "In evaluating a defendant's Rule 50 motion, made at the close of the plaintiff's case, we consider all of the evidence in a light most favorable to the plaintiff and grant the plaintiff

the benefit of all reasonable inferences. We may affirm a judgment as a matter of law only if the facts and inferences point so overwhelmingly in favor of the movant . . . that reasonable people could not arrive at a contrary verdict." Id. (internal quotation marks omitted).

The district court, citing O.C.G.A. § 11-2-607, concluded that Woodridge's attempted rescission of the contract in July was too late because there "had been acceptance, sales, disposition, and loss of goods after delivery." The court also concluded that although it was unclear whether McCarty was acting as the agent of any party during the negotiation of the contract in March, by April, McCarty and Woodridge were acting together to sell the trailers because "Woodridge let McCarty have possession of titles [and] possession of the trailers."

The district court did not err in granting judgment as a matter of law to STM. Under the UCC, "if the goods or the tender of delivery fail in any respect to conform to the contract, the buyer may: (a) Reject the whole; or (b) Accept the whole; or (c) Accept any commercial unit or units and reject the rest." O.C.G.A. § 11-2-601. The buyer has accepted if he "[d]oes any act inconsistent with the seller's ownership." Id. § 11-2-606(c). Rejection must occur within a reasonable time after delivery or tender. Id. § 11-2-602(1).

The uncontroverted evidence shows that in April of 2007, Sandy Utley, a

3

general partner in Woodridge, visited the Southeast Freight Lines lot in Atlanta where the eighty-seven trailers were stored. He met McCarty at the lot and was shown the trailers. At that point, McCarty gave Utley forty-four original certificates of title and MVR-2 forms. Utley noted that the transferee line in the MVR-2 forms was blank at that time. Utley asked about the title forms for the remaining trailers. McCarty informed Utley that he did not have them on hand at that time. At that point, STM had placed the trailers at the site of physical delivery and the titles and MVR-2 forms in the hands of McCarty. Utley had actual possession of the title documents and MVR-2 forms for forty-four trailers and knew that McCarty had possession of the balance. Woodridge, through Utley, was aware of these facts and had the duty to reject or accept the trailers. Utley not only accepted them, see id. § 11-2-606(c), but also allowed McCarty to continue to hold the title documents and MVR-2 forms in order to try to resell the trailers for Woodridge and make money for both Woodridge and McCarty.

"Where a tender has been accepted: (a) The buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Id. § 11-2-607(3)(a). Woodridge asserts that STM breached the agreement by conveying MVR-2 forms with the transferee line left blank. Utley, however, was aware of the condition of the MVR-2 forms in

4

April 2007. Instead of notifying STM that Woodridge considered that a breach of the agreement, he accepted the 44 forms that McCarty delivered and continued with his plan to sell those and the other trailers with McCarty for three months.

Moreover, after the April meeting, Utley and McCarty continued with their plan to sell the trailers. Although Utley tried to get the remaining title certificates and MVR-2 forms from McCarty and sought money from McCarty for trailers that had been sold, Utley never informed STM that Woodridge had any problem with the trailers or the delivery of the title certificates and MVR-2 forms. In late June 2007, McCarty admitted to Utley that he sold several trailers and that the proceeds from those sales were gone. Still, at that time, Utley returned twenty original title certificates and MVR-2 forms to McCarty so that he could complete the sale of twenty more trailers.

After continuing to receive no sale proceeds from McCarty for almost three months, Woodridge sent a demand letter to STM on July 9, 2007. The letter alleged that the trailers had never been delivered and sought delivery of the trailers or a refund of the sales price. The letter did not mention the condition of the MVR-2 forms. Woodridge never tendered any trailers or title documents back to STM. At trial, Utley admitted that all the trailers were gone. By undertaking to sell the trailers, Woodridge acted inconsistently with STM's ownership and hence

5

accepted the trailers. Moreover, Woodridge never notified STM that it considered the blank MVR-2 forms a breach of the agreement.

In short, Woodridge was aware of the condition of the trailers, title certificates and MVR-2 forms in April 2007. Instead of notifying STM of any condition that it considered a breach of the contract or rejecting the trailers or the title documents and MVR-2 forms, Woodridge acted inconsistently with STM's ownership of the trailers by undertaking to sell them. By the time Woodridge notified STM of any problem with the deal, all of the trailers were gone. Woodridge never tendered any trailers, title documents, or MVR-2 forms to STM to allow STM to cure any breach. Under these facts, the district court did not err in granting judgment as a matter of law in favor of STM.

## II. Failure to Grant Summary Judgment to Woodridge

Because the district court did not err in granting judgment as a matter of law in favor of STM, it did not err in denying Woodridge's motion for summary judgment.

## III. Denial of Motion in Limine

Woodridge contends that the district court erred by admitting evidence of what happened after STM delivered the original title certificates and dealer reassignments to McCarty. Although Woodridge sought and failed to have such

6

evidence excluded through a motion in limine made before trial, it did not object to any such evidence during trial. "The overruling of a motion in limine is not reversible error, only a proper objection at trial can preserve error for appellate review." United States v. Gari, 572 F.3d 1352, 1356 n.2 (11th Cir. 2009) (internal quotation marks omitted). Because Woodridge did not object to the admission of such evidence at trial, it has failed to preserve the question for review.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.