In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-1388

UNITED STATES OF AMERICA,

*Plaintiff-Appellee.*

*v.*

SANTIAGO GUTIERREZ-CEJA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 11 CR 362—**James B. Zagel**, *Judge*.

SUBMITTED FEBRUARY 25, 2013—DECIDED MARCH 29, 2013

Before POSNER, WILLIAMS, and SYKES, *Circuit Judges*.

POSNER, *Circuit Judge*. The defendant pleaded guilty to being in the United States illegally after having been removed. The judge sentenced him to 84 months in prison. The statutory maximum prison sentence for illegal reentry is usually 2 years, 8 U.S.C. § 1326(a), but removal after conviction for an aggravated felony (the defendant had two such convictions) jacks up the maximum to 20 years. § 1326(b)(2). The defendant has

appealed, but his lawyer asks to be allowed to withdraw from the case on the ground that there is no colorable basis for appealing. *Anders v. California*, 386 U.S. 738 (1967).

The request is surprising because the lawyer's brief states that "the written Judgment [the sentence] included terms that may have been outside the district court's authority to impose." Indeed it did. But the brief goes on to state that "it appears unlikely that [those terms] will ever be enforced. As such, they are, at most, merely harmless error. In the alternative, if they must not remain in the Judgment, they are the type of error that this Court may excise directly, without disturbing the rest of what is an otherwise reasonable sentence. Therefore, it would be frivolous to argue on direct appeal that [the] case must be remanded because of an unlawful sentence."

The lawyer is wrong in saying that the terms in question "may" have exceeded the court's authority and in describing them as "merely harmless errors."

In imposing sentence the district judge said: "I'm not imposing supervised release[,] because [the defendant is] going to be deported after this occurs." Yet the written judgment, under the heading "additional imprisonment terms," states that upon release from prison "the defendant is to be surrendered to a duly authorized official of the Department of Homeland Security for a determination on the issue of deportability" and "if ordered deported, the defendant shall not re-enter the United States without" authorization in ad-

vance. The judgment continues: "if not deported, the defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and random drug tests thereafter, conducted by the U.S. Probation Office, not to exceed 104 tests per year. The defendant shall, pursuant to 18 U.S.C. Section 3583(d), cooperate in the collection of a DNA sample."

The DNA provision is an express condition of supervised release; so is submission to a drug test within 15 days of release; and so are the provisions in the sentence relating to use of a controlled substance. The conditions relating to deportation are independent of supervised release and not challenged. But section 3583(d) is the only possible ground for the other impositions (refraining from use of a controlled substance and submitting to a drug test within 15 days of release) and it requires an order of supervised release as a precondition to their imposition. As for submission to random drug tests at the discretion of the probation office, it is unclear whether section 3583(d) permits the judge in an order of supervised release to leave the number of drug tests up to that office. The statute requires the defendant, after his first drug test (the one he is required to take within 15 days after his release), to "submit to . . . at least 2 periodic drug tests thereafter (as determined by the court)"—not as determined by the probation service. Our opinion in *United States v. Bonanno*, 146 F.3d 502, 511 (7th Cir. 1998) said that the court must determine the number, but in *United States v. Tejeda*, 476 F.3d 471, 4774 (7th Cir. 2007), we suggested that it might "not be

error to grant the probation officer discretion to designate testing which is incidental to the program," provided it was not unlimited discretion. We said that the condition of supervised release that the defendant "participate in a program of testing and residential or outpatient treatment for drug and alcohol abuse, as approved by his supervising probation officer," "until such time as he is released from such program," with no mention of the specific number of drug tests that could be required, granted the probation office too much discretion. *Id*. at 472-74.

But those were cases in which the judge had not mentioned a number at all; in this case he mentioned a maximum number per year. The case law indicates that specifying a maximum number of tests is enough to comply with the statute, *United States v. Garcia*, 522 F.3d 855, 861 (9th Cir. 2008); *United States v. Padilla*, 415 F.3d 211, 224 (1st Cir. 2005) (en banc); *United States v. Melendez-Santana*, 353 F.3d 93, 103 (1st Cir. 2003), and so, as we have held, is specifying a maximum number of tests per year. *United States v. Guy*, 174 F.3d 859, 862 (7th Cir. 1999). For that's really the same thing, since the overall maximum number is simply the maximum per year times the number of years of supervised release—unless supervised release is imposed for the remainder of the defendant's life after his release from prison. In that event specifying the maximum number per year may not suffice, though we have found no cases addressing the issue. It is not an issue in this case because the maximum term of supervised release that could have been imposed on the defendant was three years. See 18

U.S.C. §§ 3559(a)(3), 3582(b). And even when lifetime supervised release is ordered, a rough estimate of the total number of tests to which the defendant is likely to be subjected can be derived from longevity tables.

Allowing the sentencing judge to specify a maximum number of tests rather than a specific number is sensible, because the judge won't have as good an idea of the optimal frequency of the drug tests as the probation service will. The rub here is that there was no order of supervised release, and so there is no way to compute the total number of tests to which the defendant might be subjected. Maybe an annual estimate is good enough— again we have found no cases addressing the issue— but the issue is at least an arguable one.

The judge would have been entitled to impose all the conditions he imposed had he ordered supervised release, at least if he had specified the term of supervised release. But in his oral sentence he expressly declined to order supervised release and the written judgment does not mention supervised release. The oral sentence reflects the judge's confident belief that the defendant would be deported ("removed" is the current legal term for "deported," and we'll use the current term in the balance of this opinion) as soon as he was released from prison. But the "additional impris-onment terms" in the written sentence are premised on the possibility that he won't be removed promptly, or maybe ever. A lot can happen in seven years, including changes in immigration law, changes in the defendant's situation (marital, health, etc.), changes in conditions in

the country to which the defendant might be ordered removed, and changes in enforcement policy. In addition, orders of removal are frequently disobeyed unless the person ordered removed is a prisoner and upon completion of his prison term is taken directly from prison to the plane that will fly him out of the United States.

The suggestion by the defendant's lawyer that the judge's error in imposing terms in the sentence that are authorized only if the judge imposes supervised release is harmless must assume that if we remanded for resentencing, *of course* the judge would impose supervised release so that he could re-impose the additional terms that he thought appropriate. But maybe not, since at the sentencing hearing he seemed confident that the defendant would be removed immediately upon completion of his prison term, making supervised release otiose. Maybe the "additional imprisonment terms" in the written sentence are boilerplate included by accident. But all that matters is that we have no authority to order a reversal in order to give the judge an opportunity to impose a term of supervised release—an additional sentence—when the government has not filed a cross-appeal. *Greenlaw v. United States*, 554 U.S. 237 (2008).

But we can take the lawyer's alternative suggestion and "excise" the post-release terms, thereby modifying the sentence, and affirm it as modified. *United States v. Ramirez*, 675 F.3d 634, 639 n. 1, 646 (7th Cir. 2011) (per curiam); *United States v. McKnight*, 665 F.3d 786, 795

(7th Cir. 2011); *United States v. Munoz*, 610 F.3d 989, 997 (7th Cir. 2010); *United States v. Boyd*, 608 F.3d 331, 335 (7th Cir. 2010); *United States v. Godoy*, 2013 WL 425334, at *5 (D.C. Cir. Feb. 5, 2013); cf. *Overstreet v. El Paso Disposal, L.P.*, 625 F.3d 844, 857 (5th Cir. 2010). That gives the defendant all the relief he could possibly obtain in a fully briefed and argued appellate proceeding.

When in a criminal appeal the court of appeals notices a plain error, it can reverse even if the appellant had not drawn the error to the court's attention, *Greenlaw v. United States*, *supra*, 554 U.S. at 247; *Silber v. United States*, 370 U.S. 717, 718 (1962) (per curiam); *United States v. Hampton*, 585 F.3d 1033, 1044-45 (7th Cir. 2009); *United States v. Washington*, 558 F.3d 716, 721 (7th Cir. 2009); *United States v. Sealed Appellant 1*, 591 F.3d 812, 819 (5th Cir. 2009); *United States v. Gari*, 572 F.3d 1352, 1360-61 (11th Cir. 2009), and the present case is less extreme. Although the *Anders* brief is wrong in calling the district judge's error in imposing post-release terms harmless—it is a plain error—the brief does at least point out that it was error.

In all but the rarest cases, the proper sequel to a determination that an *Anders* brief has identified a reversible error is to set the case for full briefing on the merits, both to give the government a chance to respond and to give the defendant's lawyer a chance to explore further other possible grounds for reversal. *Penson v. Ohio*, 488 U.S. 75, 81-83 (1988). What makes this case unique, so far as we've been able to determine, is that the error is so patent that there is no response that the government

could make to it, and that the *Anders* brief, while wobbly with respect to the error of imposing post-release conditions in the absence of an order of supervised release, adequately demonstrates the absence of any possible ground of appeal other than the post-release conditions. *United States v. Tabb*, 125 F.3d 583, 584-85 (7th Cir. 1997); *United States v. Wagner*, 103 F.3d 551, 553 (7th Cir. 1996). And the brief does identify their imposition as error, even while mistakenly characterizing the error as harmless.

In these circumstances we can achieve judicial economy with no sacrifice of anyone's legal rights by modifying the judgment of the district court to eliminate the post-release terms concerning the use of controlled substances, drug tests, and collection of a DNA sample, granting the lawyer's motion to withdraw, and, having corrected the judgment, dismissing the appeal.

SO ORDERED.