**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ralph Jeff OBREGON, Julio Isaac Padron, Nelson Alberto Vasquez,**
**Defendants–Appellants.**

No. 88–5396.

United States Court of Appeals,
Eleventh Circuit.

Feb. 9, 1990.

Theodore J. Sakowitz, Federal Public Defender, and Stewart G. Abrams, Asst. Federal Public Defender, Miami, Fla., for Ralph Jeff Obregon.

Fred Schwartz and Raoul G. Cantero, III, Miami, Fla., for Nelson Alberto Vasquez.

Alvin E. Entin, Miami, Fla., for Julio Isaac Pardon.

Bruce C. Udolf, Mayra R. Lichter, and Linda C. Hertz, Asst. U.S. Attys., and Dexter W. Lehtinen, U.S. Atty., Miami Fla., for the U.S.

Before HATCHETT and EDMONDSON Circuit Judges, and DYER, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this appeal, we affirm the district court's rulings on sufficiency of the evidence, prosecutorial misconduct, and the validity of the search warrant.

## FACTS

On May 13, 1987, a boarding party from the Coast Guard Cutter CAPEGULL boarded a forty-four foot vessel, the JANNIELL, which was anchored, without lights, in the vicinity of Nassau, Bahamas. The boarding party conducted a "space accountability search" to determine if the vessel con-

tained any hidden compartments. The vessel appeared to have been altered because an exhaust tube led to the center of the vessel, instead of straight back from the engines to the outboard parts. During the search, the boarding party checked the gas tanks by using sounding tape to determine if they contained any hidden compartments.[1] Finding no hidden compartments or unaccounted for space, the Coast Guard officer filled out a "boarding report" which listed the names of the passengers, including Obregon, Padron, and Vasquez ("appellants").

On May 21, 1987, Federal Bureau of Investigation (FBI) agents obtained a search warrant for the JANNIELL, which was located at the Rickenbacker Marina in Key Biscayne, Florida. The FBI agents searched the vessel and found a concealed compartment in each of the JANNIELL's fuel tanks. The right tank concealed compartment contained 282 kilograms of cocaine, and the left tank compartment contained 331 kilograms of cocaine.

In addition to cocaine, the FBI agents found the following items: a navigational chart for the Bahamas; a yachtsman's guide to the Bahamas; an invoice to Vasquez from Manatee Bay Marina in the amount of $1,176 for work and docking fees; an invoice dated June 15 to Vasquez from Manatee Marina in the amount of $1,930 for the vessel HONEYBEAR with the identification number FL0473; a receipt dated August 31 to Vasquez in the amount of $239 for storage of the vessel; Florida registration certificate dated August 26, 1986, indicating that vessel number FL0473 was registered to John M. Haggerty; and a copy of the Coast Guard boarding report.[2]

Until the FBI agents discovered the Coast Guard boarding report, they were unaware that Coast Guard personnel had boarded the vessel. After verifying the boarding, the FBI agents obtained the fingerprints of Padron and Vasquez from information obtained from the Coast Guard. The fingerprints matched fingerprints lifted from the packages of seized cocaine. The FBI also obtained a birth certificate which revealed that Vasquez's daughter's name was Janniell.

## PROCEDURAL HISTORY

On December 22, 1987, a federal grand jury indicted Padron, Obregon, Vasquez, and Espinosa, for conspiracy to import at least five kilograms of cocaine in violation of 21 U.S.C. § 963 (Count I); conspiracy to possess with intent to distribute at least five kilograms of cocaine in violation of 21 U.S.C. § 846 (Count II); possession with intent to distribute at least five kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count III); and importation of at least five kilograms of cocaine (Count IV). Espinosa pleaded guilty and is not in this appeal. Padron and Vasquez moved to suppress the evidence seized from the JANNIELL. Obregon, Padron, and Vasquez filed a motion for judgment of acquittal on all four counts. The district court denied the motion on Counts I, II, and III, but granted the motion on Count IV.

The district court sentenced Obregon to three concurrent terms of fifteen years imprisonment for Counts I, II, and III, plus five years of supervised release as to Count III, following the period of confinement. Padron and Vasquez filed a motion for a new trial and a stay of sentencing, asserting that the confidential informant mentioned in the affidavit supporting the search warrant did not exist and was merely a fictional character through which the FBI agent misled the magistrate in the issuance of the search warrant. After conducting an evidentiary hearing, a United

---

**1.** A sounding tape is a tape with a weight on its end. The tape is dropped through the fill tube of the gas tank to the bottom in order to measure the height of the tank.

Testimony at trial indicated that the presence of a secret compartment in the fuel tank, surrounded by gas, would not be detected by the use of a sounding tape.

**2.** The JANNIELL's identification number was also FL0473. The JANNIELL was previously named HONEYBEAR. The name of the vessel was changed between April 4, 1987, and May 21, 1987.

States Magistrate recommended that the district court deny the motion for a new trial. The district court adopted the magistrate's report, and sentenced Padron and Vasquez to three concurrent terms of fifteen years of imprisonment for Counts I, II, and III, followed by five years of supervised release on Count III.

## CONTENTIONS

Padron and Vasquez contend that the district court erred in denying their motion for a mistrial based on prosecutorial misconduct. They also contend that the government presented insufficient evidence to convict them on Count I, and the district court erred in denying their motion for a new trial. Obregon contends that the government presented insufficient evidence to convict him on all three counts.

The government contends that the prosecutor's statements were proper and did not unfairly prejudice the appellants, that the affidavit supporting the search warrant was not false or misleading, and that the evidence was sufficient.

## ISSUES

The issues are: (1) whether the district court erred in denying Padron's and Vasquez's motion for a mistrial; (2) whether sufficient evidence existed to convict Obregon, Padron, and Vasquez; and (3) whether the district court erred in failing to grant Padron's and Vasquez's motion for a new trial on the basis of newly discovered evidence.

## DISCUSSION

### A. Prosecutorial Misconduct

Vasquez and Padron contend that they were unfairly prejudiced by statements the prosecutor made during opening argument which could only be elicited from witnesses the government had no intention to call to testify. Specifically, they object to the following statements: (1) the Coast Guard was on the "lookout" for the JANNIELL at the time they boarded the vessel; and (2) the JANNIELL was subjected to a space accountability search.

■ In order to succeed on a claim of prosecutorial misconduct, we apply a two-part test. We determine whether the challenged statements were improper, and if so, whether they prejudicially affected the appellants' substantial rights. *See United States v. Walther*, 867 F.2d 1334, 1341 (11th Cir.), *cert. denied* — U.S. —, 110 S.Ct. 144, 107 L.Ed.2d 103 (1989); *United States v. Lacayo*, 758 F.2d 1559, 1565 (11th Cir.), *cert. denied*, 474 U.S. 1019, 106 S.Ct. 568, 88 L.Ed.2d 553 (1985). In *United States v. Sawyer*, 799 F.2d 1494 (11th Cir. 1986), *cert. denied*, 479 U.S. 1069, 107 S.Ct. 961, 93 L.Ed.2d 1009 (1987), this court condemned the practice whereby a prosecutor refers to testimony in the opening statement which is never introduced at trial. In *Sawyer*, the prosecutor informed the jury that: "You will hear evidence that Steven Sawyer told a representative of the CFTC in 1982, that Steven Sawyer was guilty." *Sawyer*, 799 F.2d at 1507. In spite of this promise, the prosecutor did not introduce the confession or evidence that the statements were made in 1982.

■ In this case, the government does not contest the fact that the prosecutor referred to testimony which he had no intention of presenting at trial. But even if we agree with Padron and Vasquez that the statements were improper, we disagree with the contention that the statements were unfairly prejudicial.

A prosecutor's statement will justify the reversal of a conviction if it undermined "the fairness of the trial and contributed to a miscarriage of justice." *Sawyer*, 799 F.2d at 1507. In determining whether to reverse a conviction based on improper statements, we must review the claim against the entire record. *See United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) (quoting *United States v. Frady*, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592, 14, 71 L.Ed.2d 816 (1982)). "[E]ach case necessarily turns on its own facts." *United States v. Socony–Vacuum Oil Co.*, 310 U.S. 150, 240, 60 S.Ct. 811, 852, 84 L.Ed. 1129 (1940). Our review of this record leads us to conclude that the

prosecutor's statements did not undermine the fairness of the trial and did not contribute to a miscarriage of justice.

First, we note that the district court gave cautionary instructions when charging the jury. *See Sawyer,* 799 F.2d at 1507 (the court concluded that repeated cautionary instructions cured any prejudice resulting from improper remarks). Second, the prosecutor refrained from repeating the improper statements or from mentioning them during closing argument. *See United States v. De La Luz Gallegos,* 738 F.2d 378, 383 (10th Cir.), *cert. denied,* 469 U.S. 1076, 105 S.Ct. 574, 83 L.Ed.2d 514 (1984) (prosecutor's improper comments in opening statement held harmless where the matter was never brought up again by the prosecutor or mentioned in closing arguments). Most importantly, we conclude that independent evidence, not connected to the statements, in this case established guilt. Both Padron and Vasquez were aboard the JANNIELL near Nassau, Bahamas, a known drug smuggling area, approximately one week before the FBI agents recovered cocaine from the secret compartments in the vessel's fuel tanks. Vasquez, an authorized user of the vessel, had a daughter with the same name as the vessel. Padron's and Vasquez's fingerprints were found on the packages of cocaine. Finally, the government presented expert testimony indicating that the fingerprints were placed on the packages after the drugs were placed inside.

**B. Sufficiency of Evidence**

In judging the sufficiency of evidence, we must view the evidence in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). The jury's verdict must be sustained if any reasonable construction of the evidence allowed the jury to find the appellants guilty beyond a reasonable doubt. *United States v. Montes–Cardenas,* 746 F.2d 771, 778 (11th Cir.1984). The evidence may be sufficient even though it is not inconsistent with every reasonable hypothesis of innocence. The jury is free to choose among reasonable constructions of the evidence. *United*

*States v. Zielie,* 734 F.2d 1447, 1458 (11th Cir.1984), *cert. denied,* 469 U.S. 1189, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985) (quoting *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982)). The test is "identical whether the evidence is direct or circumstantial, and no distinction is to be made between the weight given to either direct or circumstantial evidence." *United States v. Gonzalez,* 719 F.2d 1516, 1521 (11th Cir.1983), *cert. denied,* 465 U.S. 1037, 104 S.Ct. 1312, 79 L.Ed.2d 710 (1984).

Under 21 U.S.C. § 963, the government must prove that the appellants agreed to import narcotics into the United States and knowingly and voluntarily participated in the agreement. *United States v. Bollinger,* 796 F.2d 1394, 1404 (11th Cir.1986), *modified on other grounds,* 837 F.2d 436 (11th Cir.1988), *cert. denied,* 486 U.S. 1009, 108 S.Ct. 1737, 100 L.Ed.2d 200 (1988). The government may prove such an agreement by circumstantial evidence, through "inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme." *United States v. Tamargo,* 672 F.2d 887, 889 (11th Cir.), *cert. denied,* 459 U.S. 864, 103 S.Ct. 141, 74 L.Ed.2d 119 (1982) (quoting *United States v. Spradlen,* 662 F.2d 724, 727 (11th Cir.1981)). The government need not prove that each alleged conspirator knew all the details of the conspiracy. The government provides sufficient proof of knowledge by demonstrating the conspirator knew of the essential purpose of the conspiracy. *United States v. Russell,* 703 F.2d 1243, 1250 (11th Cir.1983). A person may also be found guilty of a conspiracy "even if he plays only a minor role in the total scheme." *United States v. Tamargo,* 672 F.2d at 889.

In challenging the sufficiency of the evidence to convict him of conspiracy to import cocaine, Obregon argues that the government did not prove that (1) an agreement existed, and (2) cocaine was imported. Viewing the evidence in the light most favorable to the government, the following evidence was sufficient to indicate that an agreement existed: all of the persons who

were indicted were on board the JANN-IELL, in a known drug-smuggling area; the vessel had been modified for smuggling purposes; and Obregon's fingerprints were placed on the packages after the drugs were inside.

We also conclude that the following evidence was sufficient to establish that cocaine was imported: testimony that cocaine is not grown in the United States; the fact that Obregon, Padron and Vasquez were on board the JANNIELL in the Bahamas; and the fact that all three appellants' fingerprints were on packages of cocaine. In addition, the fact that Vasquez paid a substantial sum of money to have repairs done on the vessel, and the fact that Vasquez's daughter has the same name as the vessel, further ties him to the conspiracy.

Padron and Vasquez stress the fact that the Coast Guard search in the Bahamas failed to discover cocaine on the vessel and that fresh caulking was noticed on the day the vessel was searched. Although those facts were established, it is reasonable to conclude that the Coast Guard searches simply failed to discover the cocaine, or that the smugglers placed the cocaine on the vessel after the Coast Guard had conducted its search. If the cocaine was placed on board after the Coast Guard search, it would also explain the presence of fresh caulking.

Obregon's contention that insufficient evidence exists to convict him for possession of cocaine is meritless. Notwithstanding the non-incriminating scenarios offered to explain how his fingerprints appeared on the packages of cocaine, the jury heard testimony from government experts which refuted those scenarios. The jury is free to make credibility choices which we will not disturb on appeal. *See United States v. Collins,* 779 F.2d 1520, 1530 (11th Cir. 1986).

■ We also conclude that the government presented sufficient evidence to convict Obregon of conspiracy to possess with intent to distribute. As indicated earlier, the government presented sufficient evidence to establish an agreement. Additionally, evidence of an intent to possess co-

caine for the purpose of distribution can be inferred when large quantities of cocaine are seized. *United States v. Montes–Cardenas,* 746 F.2d 771, 778–79 (11th Cir. 1984). The seizure of the 613 kilograms of cocaine is sufficient to support Obregon's conviction.

## C. Newly Discovered Evidence

Following an evidentiary hearing on the motion for new trial, a United States magistrate concluded that the affidavit on which the search warrant was based, was not false nor made in reckless disregard of the truth. *See Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The district court adopted the magistrate's report and recommendation.

■ Our review of the district court's denial of a motion for a new trial based on newly discovered evidence is subject to the abuse of discretion standard. *United States v. Champion,* 813 F.2d 1154 (11th Cir.1987). In order to succeed on a motion for a new trial based on newly discovered evidence, five elements must be established: (1) the evidence must be discovered after trial; (2) the movant must show due diligence to discover the evidence; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material to the issues before the court; and (5) the evidence must be of such a nature that a new trial would probably result. *Champion,* 813 F.2d at 1171.

■ In attacking the affidavit, Padron and Vasquez argue that the affiant falsely stated that "none of the information provided by the informant has been found to be false or misleading." According to Padron and Vasquez, the affiant misled the magistrate by stating that the confidential informant gave reliable information regarding known associates of a fugitive and places where the fugitive "hung out," when, in fact, the agent knew the fugitive was never arrested. They also maintain that the affiant led the magistrate to believe that the confidential informant provided information regarding two fugitives when in fact only one fugitive was involved. Finally, they argue that when the affiant stated that the confidential infor-

mant advised the FBI of a residence which contained 400 kilograms of cocaine, the magistrate was misled because a subsequent search of the residence revealed only a small amount of cocaine.

The magistrate found that, in addition to the small amount of cocaine, the search uncovered about $535,000 in United States currency. The magistrate concluded that, although not skillfully drafted, the affidavit did not contain any intentional false statements nor did it display a reckless disregard for the truth. The district court agreed with the magistrate.

Padron and Vasquez also argue that a "confidential informant" is an individual who is personally known to the law enforcement agency and whose information is recognized as being reliable; a "confidential source" is merely an anonymous tipster whose reliability is unknown. They maintain that the use of the term "confidential informant" in the affidavit was improper because the affiant had never met the informant. After hearing expert testimony from both sides, the magistrate found that the terms "confidential informant" and "confidential source" are synonymous. The district court agreed. We find no abuse of discretion in the district court's denial of the motion for new trial.

### CONCLUSION

We conclude that, during opening argument, the prosecutor improperly referred to evidence which he had no intention of eliciting during trial. We also conclude, however, that the statements were not unfairly prejudicial to Padron and Vasquez.

Additionally, we conclude that the government presented sufficient evidence to convict all of the appellants. Finally, we conclude that the district court did not err in denying Padron's and Vasquez's motions for new trial based on newly discovered evidence. Accordingly, the district court is affirmed.

AFFIRMED.