[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 09-12705

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 13, 2010
JOHN LEY
CLERK

D. C. Docket No. 07-20312-CR-UU

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WAYNE TROUGHT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 13, 2010)

Before PRYOR and FAY, Circuit Judges, and QUIST,* District Judge.

PER CURIAM:

Wayne Trought appeals his conviction for conspiracy to posses with intent to

---

\* Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(iii). On appeal, Trought argues that (1) the district court erred in admitting the testimony of a government witness, Larry Handfield, Esq., regarding his representation of Trought on a forfeiture claim; and (2) the evidence was insufficient to support his conviction. After a thorough review of the record, we affirm.

We review a district court's evidentiary rulings for abuse of discretion. United States v. Docampo, 573 F.3d 1091, 1096 (11th Cir. 2009). Even if the district court erred in admitting evidence, we may affirm if the error was harmless. United States v. Hands, 184 F.3d 1322, 1329 (11th Cir. 1999). An evidentiary error is harmless if it "had no substantial influence on the outcome and sufficient evidence uninfected by error supports the verdict." Id. (quotation omitted).

We review a defendant's challenge to the sufficiency of the evidence *de novo*. United States v. Toler, 144 F.3d 1423, 1428 (11th Cir. 1998). We must view the evidence in the light most favorable to the government, giving the government the benefit of all reasonable inferences and determinations of witness credibility. United States v. Wright, 392 F.2d 1269, 1273 (11th Cir. 2004). "[E]vidence is sufficient to support a conviction if a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." United States v. Williams, 527 F.3d 1235, 1244 (11th Cir. 2008) (internal quotations omitted).

To convict a defendant of a conspiracy to possess with the intent to distribute cocaine, the government must show that the defendant knowingly and voluntarily participated in an agreement between two or more persons to commit the crime. United States v. Obregon, 893 F.2d 1307, 1311 (11th Cir. 1990) ("The government need not prove that each alleged conspirator knew all the details of the conspiracy. The government provides sufficient proof of knowledge by demonstrating the conspirator knew of the essential purpose of the conspiracy.") The government may prove the existence of a conspiracy through circumstantial evidence, such as the conduct of the participants in the scheme. United States v. Seher, 562 F.3d 1344, 1364 (11th Cir. 2009).

Although Trought concedes that the government's evidence established a conspiracy to purchase cocaine, he contends that the evidence was insufficient to show anything more than that he was merely "'along for the ride.'" Setting aside the testimony from attorney Handfield, the evidence presented at trial amply supported Trought's conviction.

Wil, with whom Mateo was working to arrange the cocaine purchase, referred to "the dudes" or "buyers," indicating a minimum of two persons who were interested in purchasing cocaine. Mateo first saw the buyers, Trought and Fletcher, on February 7, 2007, at Wil's apartment immediately before the transaction. The buyers followed

Wil and Mateo to the Burger King restaurant in their own vehicle, an Impala, to meet Yosmel, the seller.

While inside the Burger King, Mateo told Trought and Fletcher that he had a "good hookup." After Fletcher returned from using the bathroom, rather than joining Trought, Mateo, and Wil at the table where they were seated, Fletcher sat at a separate table. When Wil asked Fletcher to come join them, Fletcher responded that he was sitting where he could see the car because his job was to watch the money. When the four men left the restaurant, Fletcher went directly to the Impala, while Trought, Wil and Mateo walked to the children's play area and waited. After receiving a call from Yosmel with instructions where they should meet Yosmel, Wil and Mateo went to their car and Trought joined Fletcher in the Impala, and they followed Wil and Mateo to meet Yosmel.

During the traffic stop, when Sgt. Annunziato found the currency in the trunk of the Impala, Trought stated, "You're not putting that shit on me. That is not mine. You are not putting that shit on me." However, when Sgt. Matas presented forms to Trought and Fletcher asking them to disclaim any ownership rights in the seized currency, both men refused to sign them. Finally, after the traffic stop had concluded and Wil and Mateo picked Trought up in their vehicle, Trought complained that "it looked like a setup" and told Wil and Mateo, "You'll see me" or "We'll see."

4

Based upon the foregoing evidence, a reasonable jury could find that Trought was a member of the conspiracy. The jury could have found that Trought was one of two buyers and, given that Trought interacted more with Wil and Mateo than did Fletcher, who sat at a separate table and did not join the other three men outside the restaurant, Trought was even in charge of the transaction.

Considering the weight of the evidence regarding Trought's guilt, if the district court erred in admitting Handfield's testimony (we express no opinion on this issue), such error was harmless. United States v. Chavez, 204 F.3d 1305, 1317 (11th Cir. 2000) (any error in admitting evidence is harmless where there is other substantial evidence of the defendant's guilt).

**AFFIRMED**