[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEP 12, 2011
JOHN LEY
CLERK

_____

No. 10-10782
Non-Argument Calendar

_____

D.C. Docket No. 9:08-cr-80148-DMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DONALD PLATTEN,
a.k.a. George Donald Platten,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 12, 2011)

Before EDMONDSON, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Donald Platten appeals his convictions and 262-month total sentence for (1) conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371 (Count 1); (2) securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff(a) (Counts 2, 3, 4, 5, 6, 12); (3) conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371 (Count 16); and (4) obstruction of justice in impeding the administration of internal revenue laws, in violation of 26 U.S.C. § 7212(a) (Count 17). Platten raises five arguments on appeal. First, he argues that the district court abused its discretion in allowing two Harvard Learning Centers ("HLC") investors to opine as lay witnesses during trial that they would not have invested in HLC stock had they been aware of Platten's fraudulent activities. Second, Platten alleges prosecutorial misconduct, where the prosecutor commented during opening statement that the promissory notes issued by HLC to a co-conspirator, Eli Goldshor, included a not-yet-existent corporation as the debtor, and the government "coached" Goldshor and proffered his false testimony. Third, Platten contends that the district court violated the Confrontation Clause by admitting an Internal Revenue Service ("IRS") form pertaining to his ex-wife without requiring the government to make the original preparer of the form available at trial. Fourth, Platten submits that the district court plainly erred in allowing IRS Special Agent Kevin McCord to "vouch" for Goldshor's credibility

during McCord's testimony, and that the court abused its discretion in allowing McCord to opine as a lay witness that Platten's usage of nominees and straw persons had impeded the IRS's efforts to collect taxes. Finally, Platten claims that the district court clearly erred in finding that there were over 250 "victims" as a result of Platten's conduct, which subjected him to a 6-level sentence enhancement under U.S.S.G. § 2B1.1(b)(2)(C).

## I.

We review for abuse of discretion the district court's ruling regarding the admissibility of lay testimony under Fed.R.Evid. 701. *United States v. Myers*, 972 F.2d 1566, 1576-77 (11th Cir. 1992). Reversal is not warranted where "an error had no substantial influence on the outcome, and sufficient evidence uninfected by error supports the verdict." *United States v. Hawkins*, 905 F.2d 1489, 1493 (11th Cir. 1990).

Under Fed.R.Evid. 701, opinion testimony offered by a lay witness is admissible when the opinion is "(a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness'[s] testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge [under] Rule 702." Fed.R.Evid. 701. Further, lay witnesses can opine as to the ultimate issue to be decided by the trier of fact.

Fed.R.Evid. 704; *see United States v. Dulcio*, 441 F.3d 1269, 1274 (11th Cir. 2006) (noting that Rule 704(b)'s bar on ultimate issue applies only to expert witness testimony and not opinion testimony by lay witnesses).

The district court did not abuse its discretion in allowing the investors to opine that they would not have invested in HLC stock had they known of Platten's fraudulent activities because their testimony was rationally based on their own perceptions. The Government properly sought to show the materiality of Platten's fraud.[1]

## II.

We review the district court's determinations regarding prosecutorial misconduct *de novo* because they involve mixed questions of law and fact. *United States v. Noriega*, 117 F.3d 1206, 1218 (11th Cir. 1997). Nevertheless, we review claims that are raised for the first time on appeal for plain error. *United States v. Rahim*, 431 F.3d 753, 756 (11th Cir. 2005). Plain error exists if the defendant satisfies his burden of showing that there was (1) error, (2) that is plain, and (3) that affects the defendant's substantial rights in that it affected the outcome of

---

[1] To the extent Platten argues that he had no reporting requirements and thus could not be prosecuted for failure to report, we reject his argument. The Supreme Court has held that those same statutes under which Platten was prosecuted cover obligations to report to shareholders under circumstances similar to this case. *See Chiarella v. United States*, 445 U.S. 222, 230, 100 S. Ct. 1108, 1115 (1980).

the trial. *United States v. Turner*, 474 F.3d 1265, 1276 (11th Cir. 2007). In addition, if the first three prongs are satisfied, we have the discretion to remedy the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* Regarding the second prong, we have held that an error cannot be plain if it is not clear under current law, in that there is no binding precedent from the Supreme Court or us. *United States v. Castro*, 455 F.3d 1249, 1253 (11th Cir. 2006).

We subject allegations of prosecutorial misconduct to a "two-part test." *United States v. Obregon*, 893 F.2d 1307, 1310 (11th Cir. 1990). The test requires us to assess (1) whether the challenged statements were improper, and (2) if so, whether they prejudicially affected the substantial rights of the defendant. *Id.* During opening statement, the prosecutor is allowed to characterize the evidence to be adduced at trial, subject to the jury's evaluation of the accuracy of the characterization. *United States v. Correa-Arroyave*, 721 F.2d 792, 795 (11th Cir. 1983). To establish prosecutorial misconduct based on the use of false witness testimony, "a defendant must show the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material." *United States v. McNair*, 605 F.3d 1152, 1208 (11th Cir. 2010), *cert. denied* 131 S. Ct. 1599 (2011). "A defendant's

substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different." *United States v. Eckhardt*, 466 F.3d 938, 947 (11th Cir. 2006).

Here, the district court did not plainly err because there were no instances of prosecutorial misconduct below. First, the prosecutor's opening statement—that Goldshor could not incur expenses on a company that had not been incorporated yet—was proper because the government's primary argument underlying the securities fraud charges against Platten was that Platten had issued fake promissory notes to his co-conspirators in order to discharge the nonexistent debt with shares of HLC stock. Second, the government did not commit misconduct in eliciting Goldshor's testimony regarding the promissory notes because the record does not support the fact that Goldshor testified falsely. Goldshor testified consistently during both his change of plea hearing and Platten's trial that although HLC owed him some money for his services, the actual debt was significantly less than the purported amounts on the promissory notes.

## III.

We review a district court's evidentiary rulings for abuse of discretion, and questions of whether a hearsay statement is "testimonial" for purposes of the Sixth Amendment *de novo*. *United States v. Caraballo*, 595 F.3d 1214, 1226 (11th Cir.

6

2010). Violations of the Confrontation Clause are subject to a harmless error analysis. *Id.* at 1229 n.1. A Confrontation Clause violation is harmless if it is "clear beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* (quotation omitted).

The Confrontation Clause of the Sixth Amendment provides that: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, the Supreme Court held that the Confrontation Clause bars the admission of the testimonial statements of a witness who did not appear at trial, unless the witness was unavailable and the defendant had a prior opportunity to cross-examine him. 541 U.S. 36, 53-54, 124 S. Ct. 1354, 1365-66 (2004). The *Crawford* Court declined to define a "testimonial" statement, but observed generally that business records are "statements that are by their nature [] not testimonial." *Id.* at 56, 124 S. Ct. at 1367. On the other hand, the *Crawford* Court noted that a testimonial statement consists of a "solemn declaration or affirmation made for the purpose of establishing or proving some fact," namely: (1) "*ex-parte* in-court testimony or its functional equivalent"; (2) "extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions"; and (3) "statements that were made under circumstances which

7

would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 51-52, 124 S.Ct. at 1364 (quotations and ellipsis omitted).

In *Davis*, the Supreme Court elaborated, in the context of two domestic violence cases, that:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

547 U.S. at 822, 126 S.Ct. at 2273-74.

In *Melendez-Diaz* v. Massachusetts, 557 U.S. __, 129 S. Ct. 2527 (2009), the Supreme Court held that the "certificates of analysis" from a state forensic analyst showing that the substance seized by the police was cocaine are actually affidavits whose testimonial nature subject them to a defendant's rights under the Confrontation Clause. 557 U.S. at ___, 129 S.Ct. at 2531-32. The *Melendez-Diaz* Court held that the certificates are testimonial because they were made under oath for the purpose of establishing some fact at trial and "under circumstances which would lead an objective witness reasonably to believe that [they] would be

8

available for use at a later trial." *Id.* (quotation omitted). Responding to the dissent's charge that the certificates constitute business or public records, the *Melendez-Diaz* Court stated that business and public records are "generally admissible absent confrontation not because they qualify" under a hearsay exception, but because they are typically nontestimonial statements, "having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some facts at trial." *Id.* at ___, 129 S.Ct. at 2539-40; *but see United States v. Naranjo*, 634 F.3d 1198, 1213 (11th Cir. 2011) (citing *Crawford* and commenting categorically that "[b]usiness records are not testimonial").

Accordingly, after *Melendez-Diaz*, we have held that standard Immigration and Naturalization Service ("INS") I-213 forms completed by an INS agent, which contained basic biographical information of illegal aliens, are nontestimonial because the forms were used as a record by the INS in a routine, objective cataloging of biographical matters. *Caraballo*, 595 F.3d at 1228-29. Also, we have held that summary charts prepared by the government showing bank records and checks in a money-laundering trial are nontestimonial. *Naranjo*, 634 F.3d at 1213.

Here, we decline to address whether the IRS document regarding Platten's ex-wife constitutes a testimonial statement for purposes of the Confrontation Clause because any error in admitting the document was harmless. The challenged document reflected additional taxes owed by Cooney, Platten's ex-wife, and thus was only tangentially relevant to Platten's charge and conviction of obstruction of justice in impeding internal revenue laws.

IV.

When reviewing a prosecutorial misconduct claim in terms of improper vouching, we examine whether "(1) the prosecutor placed the prestige of the government behind the witness by making explicit personal assurances of the witness's credibility, or (2) the prosecutor implicitly vouched for the witness's credibility by implying that evidence not formally presented to the jury supports the witness's testimony." *United States v. Arias-Izquierdo*, 449 F.3d 1168, 1177-78 (11th Cir. 2006). A lay witness can offer opinion testimony if the testimony is (1) rationally based on his perception, (2) helpful, and (3) not based on scientific, technical, or specialized knowledge. *See* Fed.R.Evid. 701; (R6 at 745-46, 792-93).

We review Platten's vouching argument for plain error because he did not raise it below. To the extent that McCord lent credence to Goldshor's testimony,

10

there was no error, let alone plain error, because existing caselaw only prohibits the prosecutor from vouching for the credibility of witnesses, and does not forbid a witness from corroborating another's testimony. *See Arias-Izquierdo*, 449 F.3d at 1177-78. Further, in the same vein, any error stemming from the alleged vouching by McCord is not plain because Platten points to no precedent from this Court or the Supreme Court that supports his contention.

Turning to Platten's argument that the district court improperly allowed witness McCord to give opinion testimony, we reject his argument because McCord's testimony was rationally based on his perception, helpful, and not based on scientific, technical, or specialized knowledge. McCord, as an IRS special agent who had investigated Platten, properly opined based on his investigation that none of the stock transactions were conducted under Platten's name because Platten used nominees and straw persons to disguise his actual taxable income, which affected the IRS's ability to collect taxes.

V.

We review the sentencing court's application of the Sentencing Guidelines to the facts *de novo*, and the court's factual findings for clear error. *United States v. Ellis*, 419 F.3d 1189, 1192 (11th Cir. 2005). "The district court's factual findings for purposes of sentencing may be based on, among other things,

11

evidence heard during trial, undisputed statements in the PSI, or evidence presented during the sentencing hearing." *United States v. Polar*, 369 F.3d 1248, 1255 (11th Cir. 2004).

The applicable guideline section in this case, U.S.S.G. § 2B1.1(b)(2)(C), provides for a 6-level enhancement if the offense involved "250 or more victims." U.S.S.G. § 2B1.1(b)(2)(C). The commentary defines "victims," in relevant part, as "any person who sustained any part of the actual loss determined under [§ 2B1.1(b)(1)]." U.S.S.G. § 2B1.1, comment. (n.1).

Here, we hold that the district court did not clearly err in adopting the 6-level enhancement under U.S.S.G. § 2B1.1(b)(2)(C), because Platten's conduct affected more than 250 victims. Specifically, Oremland testified at trial, and the parties subsequently stipulated, that there were 441 HLC shareholders who had a loss of at least $1,000 in HLC stock from a two-year snapshot period during Platten's conspiracy. Accordingly, because the record establishes that there were at least 250 investors who had sustained a part of the $750,000 actual loss attributable to Platten, the district court did not clearly err in adopting the 6-level enhancement under U.S.S.G. § 2B1.1(b)(2)(C).

Upon review of the record and the parties' briefs, we affirm Platten's convictions and sentences.

**AFFIRMED.**[2]

---

[2]     The parties' request for oral argument is denied.